UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WIZARDS OF THE COAST LLC,<br><br>                Plaintiff,<br><br>       v.<br><br>CRYPTOZOIC ENTERTAINMENT LLC, et al.,<br><br>                Defendants. | CASE NO. C14-0719JLR<br><br>ORDER ON PLAINTIFF'S MOTIONS FOR LEAVE TO AMEND |

## I. INTRODUCTION

Before the court are Plaintiff Wizards of the Coast LLC's ("Wizards") motion for leave to amend its preliminary infringement contentions (1st Mot. (Dkt. # 41)) and motion for leave to file a second amended complaint (2d Mot. (Dkt. # 65)). These motions seek to add to this case theories of contributory patent infringement and inducement of patent infringement. The court has considered the motions, all submissions filed in support thereof and opposition thereto, the balance of the record, and

ORDER- 1

the relevant law. Being fully advised,[1] the court GRANTS both motions for the reasons set forth below.

## II.     BACKGROUND

This is a patent infringement case involving trading card games. Plaintiff Wizards of the Coast LLC ("Wizards") is the assignee of now-expired United States Patent No. RE 37'957 ("the '957 Patent"), which relates to Wizards' trading card game, "Magic: The Gathering" ("Magic"). (*See* Patent (Dkt. # 61-1).) Wizards alleges that Defendants Cryptozoic Entertainment LLC and Hex Entertainment LLC (collectively "Defendants") infringed its patent rights with their accused game—"Hex: Shards of Fate" ("Shards of Fate")—before the '957 Patent expired on June 22, 2014. (*See* Wiz. Op. Cl. Const. Br. (Dkt. # 60) at 3.)

On May 14, 2014, Wizards filed its initial complaint against Defendants, alleging patent infringement and other claims not at issue here. (*See* Compl. (Dkt. # 1).) Defendants responded on July 15, 2014, with a motion to dismiss directed to a non-patent claim and the issue of personal jurisdiction. (*See* MTD (Dkt. # 11) at 8, 13, 14.) Wizards then filed its first amended complaint ("FAC") on August 1, 2014 (*see* FAC (Dkt. # 13)), after which Defendants withdrew their motion to dismiss (*see* Dkt. # 17). On August 29, 2014, Defendants filed their answers. (*See* Ans. (Dkt. ## 23, 24).)

As noted above, the present dispute concerns the potential addition of theories of indirect patent infringement—that is, contributory infringement and inducement of

---

[1] The court finds oral argument to be unnecessary for the disposition of these motions. *See* Local Rules W.D. Wash. LCR 7(b)(4).

infringement. (*See* 1st Mot. at 1; 2d Mot. at 1; Resp. to 1st Mot. (Dkt. # 43) at 6; Resp. to 2d Mot. (Dkt. # 70) at 2.) Although the FAC alleges only direct infringement (*see* FAC ¶¶ 90-95), by at least January 28, 2011, the parties discussed whether indirect infringement would also be part of the case (*see* 2d Lorbiecki Decl. (Dkt. # 47) ¶¶ 4-6). The issue arose as the parties debated whether Wizards was entitled to a list of Defendants' subscribers. (*See id.*) Wizards offered to accept a list that showed only the number of subscribers, provided Defendants agreed not to rely on the distinction between direct and indirect infringement in defending against Wizards' patent claims. (*See id.*) Wizards insisted, however, that if Defendants would not so agree, it would require a full list to prepare a case for indirect infringement. (*See id.*; *see also id.* ¶¶ 11-12, Exs. B-C.) In hopes of resolving this dispute, Wizards proposed a stipulation that would collapse the distinction between direct and indirect infringement. (*See id.* ¶¶ 4-6.) After this initial January 28 discussion, counsel for Wizards understood that the parties would collaborate on a stipulation. (*See id.*)

On January 30, 2015, Wizards served its preliminary infringement contentions ("PICs") in compliance with the court's scheduling order. (*See id.* ¶¶ 7-8; 1st Lorbiecki Decl. (Dkt. # 42) ¶ 3, Ex. A ("PICs"); Sched. Ord. (Dkt. # 38) at 1); *see also* Local Rules W.D. Wash. LPR 120. The PICs referenced only direct infringement. (*See* PICs.) Counsel for Wizards asserts that within the next few days he became concerned that he still had not received a stipulation from Defendants and, therefore, on February 3, 2015, he sent Defendants revised PICs that included contentions of indirect infringement. (2d Lorbiecki Decl. ¶ 10; *see* 1st Lorbiecki Decl. ¶ 3, Ex. B.) Over the next week, the parties

exchanged several emails regarding the proposed stipulation.  (*See* 2d Lorbiecki Decl. ¶¶ 11-13, 15-16, Exs. B-F; *see also id.* ¶ 9 (discussing a February 2, 2015, phone conversation in which Defendants' counsel stated that they were working on the stipulation).)  For example, on February 9, 2015, Defendants' counsel sent an email to Wizards' counsel stating that "we are pursuing a stipulation as you suggested in your email" and "will pursue it with the client once we arrive with something that we think is acceptable."  (*Id.* ¶ 15, Ex. E.)  On February 27, Defendants served their non-infringement and invalidity contentions in which they objected to Wizards' revised PICs (*see id.* ¶ 14; 1st Lorbiecki Decl. ¶ 9 Ex. D); however, there is no indication in the record that Defendants ever informed Wizards that they were no longer considering the proposed stipulation.

On April 2, 2015, Wizards filed the instant motion for leave to amend its PICs to include contentions of indirect infringement.  (*See* 1st Mot.)  Defendants filed an opposition in which they urge the court to reject Wizards' request because the FAC lacks allegations of indirect infringement; Wizards was not diligent in disclosing its contentions of indirect infringement; and allowing amendment would prejudice Defendants.  (*See* Resp. to 1st Mot.)  On June 22, 2015, the court entered an order deferring ruling on the motion and giving Wizards until July 2, 2015, to formally move for leave to amend its complaint to add allegations of indirect infringement.  (*See* 6/22/15 Order (Dkt. # 64).)

On July 2, 2015, Wizards timely filed the instant motion for leave to amend its complaint to include allegations of indirect infringement.  (*See* 2d Mot.; *see also* Prop. 2d

ORDER- 4

Am. Compl. (Dkt. # 66-1).)  Defendants oppose this motion as well,[2] arguing that Wizards unduly delayed bringing the motion, amendment would prejudice Defendants, and Wizards is acting in bad faith.  (*See* Resp. to 2d Mot.)  Wizards' motions to amend are now before the court.

## III.  DISCUSSION

**A.  Legal Standards**

Wizards' motions implicate both Federal Rule of Civil Procedure 15 and Local Patent Rule 124.  Rule 15 governs amendments to pleadings.  It provides that, after an initial period for amendments as of right, pleadings may be amended only with the opposing party's written consent or by leave of the court.  Fed. R. Civ. P. 15(a).  Generally, "the court should freely give leave [to amend pleadings] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  This rule should be interpreted and applied with "extreme liberality."  *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990).  Federal policy favors freely allowing amendment so that cases may be decided on their merits.  *See Martinez v. Newport Beach City*, 125 F.3d 777, 785 (9th Cir. 1997).

The court ordinarily considers five factors when determining whether to grant leave to amend under Rule 15: "(1) bad faith, (2) undue delay, (3) prejudice to the

---

[2] One aspect of the Wizards' second motion is unopposed—Wizards' request to dismiss without prejudice 91 of its 106 copyright claims.  (*See* 2d Mot. at 1, 3; 3d Lorbiecki Decl. (Dkt. # 66) ¶¶ 4, 6, Exs. 2, 4.)  Defendants ask that dismissal be with prejudice but state that they "do not oppose [Wizards'] withdrawal of its 91 copyright claims without prejudice." (Resp. to 2d Mot. at 2-3.)  Accordingly, the court grants this aspect of Wizards' motion to amend its complaint and dismisses the 91 claims in question without prejudice.

opposing party, (4) futility of amendment," and (5) whether the pleadings have previously been amended. *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990). The court need not consider all of these factors in each case. *Atkins v. Astrue*, No. C 10-0180 PJH, 2011 WL 1335607, at *3 (N.D. Cal. Apr. 7, 2011). The third factor, however, prejudice to the opposing party, is the "touchstone of the inquiry under rule 15(a)." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). Furthermore, the Ninth Circuit has stated that undue delay by itself is insufficient to justify denying leave to amend. *Bowles v. Reade*, 198 F.3d 752, 758 (9th Cir. 1999).

In conducting this five-factor analysis, the court must grant all inferences in favor of allowing amendment. *Griggs v. Pace Am. Group, Inc.*, 170 F.3d 877, 880 (9th Cir. 1999). In addition, the court must be mindful of the fact that, for each of these factors, the party opposing amendment has the burden of showing that amendment is not warranted. *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987); *see also Richardson v. United States*, 841 F.2d 993, 999 (9th Cir. 1988).

By contrast, Local Patent Rule 124 imposes a stricter standard on amendments to infringement contentions. It allows such amendments "only by order of the Court upon a timely showing of good cause." Local Rules W.D. Wash. LPR 124. In determining whether good cause exists, courts consider first whether the moving part was diligent in amending its contentions and second whether the nonmoving part would suffer prejudice if the motion to amend were granted. *Deep9 Corp. v. Barnes & Noble, Inc.*, No. C11-0035JLR, 2012 WL 4336726, at *7 (W.D. Wash. Sept. 21, 2012); *Acer, Inc. v. Tech. Prop. Ltd.*, No. 08–CV–00877, 2010 WL 3618687, at *3 (N.D. Cal. Sept. 10, 2010). The

party seeking to amend its contentions bears the burden of establishing diligence, *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366–67 (Fed. Cir. 2006), and generally must carry that burden in order to succeed, see, e.g., *Acer, Inc.*, 2012 WL 3527891 at *3 (If [the moving party] was not diligent, the inquiry should end.").

Rule 15 and Local Patent Rule 124 therefore differ in significant respects. "Notably, under Rule 15 undue delay by itself is insufficient to justify denying a motion to amend, while under Patent Local Rule 3-6,[3] if there is no showing of diligence, then a court need not even entertain whether the amendment would prejudice the nonmoving party." *Sage Electrochromics, Inc. v. View, Inc.*, No. 12-CV-6441-JST, 2014 WL 1379282, at *2 (N.D. Cal. Apr. 8, 2014) (internal quotation marks omitted). In addition, Rule 15 places the burden of proof for all factors on the party opposing amendment, *DCD Programs, Ltd*, 833 F.2d at 187, whereas Local Patent Rule 124 requires the party seeking amendment to shoulder the burden of establishing diligence, *O2 Micro*, 467 F.3d at 1366-67.

These differences make Local Patent Rule 124 more difficult to satisfy, which, in turn, creates an issue for courts confronted with situations like the one present here. When the plaintiff seeks to amend its complaint to add a new infringement claims after

---

[3] This district's Local Patent Rule 124 is identical in relevant part to the Northern District of California's Patent Local Rule 3-6. *See* Local Rules N.D. Cal. PLR 3-6 ("Amendment of the Infringement Contentions . . . may be made only by order of the Court upon a timely showing of good cause."). Furthermore, the court has previously stated that in interpreting the local patent rules of this district, the court views Northern District of California cases interpreting their own local patent rules to be of assistance. *See REC Software USA, Inc. v. Bamboo Solutions Corp.*, No. C11-0554JLR, 2012 WL 3527891, at *2-3 & n.4 (W.D. Wash. Aug. 15, 2012).

ORDER- 7

the deadline for submitting PICs has passed, the court must decide which standard to apply. In fact, "[t]here appears to be a split in authority regarding whether Rule 15 or [Local Patent Rule 124] applies to motions to amend the complaint to add new patent infringement claims." *Sage Electrochromics, Inc.*, 2014 WL 1379282, at *2; *compare SAP Aktiengesellschaft v. i2 Techs., Inc.*, 250 F.R.D. 472, 475 (N.D. Cal. 2008) (holding that Rule 15 governs) *with Trans Video Elecs., Ltd. v. Sony Elecs., Inc.*, 278 F.R.D. 505, 507 (N.D. Cal. 2011) (concluding that the moving party must satisfy the good cause standard). Neither Defendants nor Wizards addresses this issue. Instead, both sides devote their briefing on the motion to amend the complaint to whether Wizards satisfies the Rule 15 standard. (*See* 2d Mot.; Resp. to 2d Mot.; Reply re 2d Mot. (Dkt. # 73).)

The court finds the analysis in *SAP Aktiengesellschaft* persuasive and concludes that Rule 15 governs here:

> [T]he Federal Rules authorizes district courts to grant leave to a party to amend its pleadings when justice so requires. The deadlines for preliminary contentions pursuant to the Patent Local Rules are themselves set in motion, so to speak, by the filing of the pleadings, via the applicable deadlines concerning the meet and confer process, the case management conference, and the ensuing court order. Thus, whatever actual deadlines may result from application of the timing formulas set forth in the Patent Local Rules must not trump the necessary modification of such deadlines pursuant to court orders authorized by the Federal Rules. In any event, the patent local rules recognize that the preliminary contentions may be amended by court order "upon a showing of good cause." Leave to amend the pleadings, pursuant to Rule 15(a), constitutes such good cause.

*SAP Aktiengesellschaft*, 250 F.R.D. at 475. Accordingly, the court analyzes the present dispute under Rule 15's standard for the amendment of pleadings.

ORDER- 8

**B.      Analysis**

As noted above, courts ordinarily consider five factors when determining whether to grant leave to amend under Rule 15: "(1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment," and (5) whether the pleadings have previously been amended. *Allen*, 911 F.2d at 373. The court addresses each in turn.

1.  Bad faith

The first factor is bad faith. In the context of a motion for leave to amend, "bad faith" means acting with intent to deceive, harass, mislead, delay, or disrupt. *Cf. Leon v. IDX Sys. Corp.*, 464 F.3d 951, 961 (9th Cir. 2006); *In re Ezzell*, 438 B.R. 108, 117-18 (Bkrtcy. S.D. Tex. 2010). As it has been defined in other contexts, "bad faith" means more than acting with bad judgment or negligence, but "rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity. . . . [I]t contemplates a state of mind affirmatively operating with furtive design or ill will." *United States v. Manchester Farming P'ship*, 315 F.3d 1176, 1185 (9th Cir. 2003).

Here, this factor favors allowing amendment. There is no evidence of "conscious doing of a wrong . . . , dishonest purpose or moral obliquity . . . , [or] furtive design or ill will" on Wizards' part. *Id.* Defendants argue that Wizards' delay in requesting leave to amend its complaint and "contradictory statements" to the court constitute bad faith. (*See* Resp. to 2d Mot. at 3-5, 12-13.) The court disagrees. Wizards' delay alone does not

//

//

//

ORDER- 9

amount to bad faith,[4] and Wizards' statements to the court are not necessarily contradictory and therefore do not show bad faith. (*Compare* 2d Mot. at 4 ("[I]t was only during the course of discovery that [Wizards] gained the factual background to enable assertion of the present patent claims.") *with* Reply re 1st Mot. (Dkt. # 46) at 1 ("The complaint does *refer* to indirect infringement, . . . ." (emphasis added)).) This is particularly true in light of the fact that the court must indulge all inferences in favor of allowing amendment and must therefore impute benign motives to Wizards where, as here, it is plausible to do so. *See Griggs*, 170 F.3d at 880.

    2.  Undue delay

The second factor is undue delay. "Undue delay" is delay that prejudices the nonmoving party or imposes unwarranted burdens on the court. *Davis v. Powell*, 901 F. Supp. 2d 1196, 1212 (S.D. Cal. 2012). In assessing whether there is undue delay, it is not sufficient merely to ask whether the motion to amend complies with the court's

---

[4] Contrary to Defendants' suggestion, the cases to which Defendants cite do not show that delay alone constitutes bad faith, even if the facts underlying the amendment were or should have been apparent to the movant earlier. (*See* Resp to 2d Mot. at 13-14.) Rather Defendants' cases involved some additional conduct or circumstance beyond delay that supported a finding of bad faith. For instance, in two of Defendants' cases the motion to amend was made only after it became clear that the movant's other claims would fail. *See Hampton v. McDonald*, No. 2:11-cv-0541 WBS DAD P, 2012 WL 6202740, at *2 n.5 (E.D. Cal. Dec. 11, 2012) ("Here, petitioner seeks leave to amend to add claims which he previously chose to abandon only after learning that the court was recommending that he be denied relief with respect to claims that he elected to pursue. Such circumstances support a conclusion that petitioner has proceeded . . . in bad faith in seeking further leave to amend."); *Wave Loch, Inc. v. Am. Wave Machines, Inc.*, No. 08-cv-928 BAS (NLS), 2014 WL 7261552, at *1-3 (S.D. Cal. Oct. 1, 2014) (finding that plaintiff's motion, which sought to assert new patent claims after the United States Patent Office ("USPTO") held the previously asserted and similar claims invalid, was at best an attempt "to take a second bite at the apple in the USPTO," at worst an attempt "to prolong frivolous litigation to harass" the defendant, and thus in either case appeared "to be undertaken in bad faith"). Defendants point to no like circumstances here that might convert mere delay into bad faith.

1  scheduling order.  *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 953
2  (9th Cir. 2006).  Instead, a district court must inquire whether the moving party knew or
3  should have known the facts and theories raised by the amendment at the time of the
4  original pleading, *id.*, although the fact that a party could have amended a complaint
5  earlier does not in itself constitute an adequate basis for denying leave to amend, *Howey*
6  *v. United States,* 481 F.2d 1187, 1190-91 (9th Cir. 1973).  Whether there has been "undue
7  delay" should be considered in the context of (1) the length of the delay measured from
8  the time the moving party obtained relevant facts; (2) whether discovery has closed; and
9  (3) proximity to the trial date.  *Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 798-99 (9th Cir.
10 1991).

11       This factor slightly favors amendment.  On the one hand, a substantial period of
12 time has passed since Wizards learned the facts underlying its indirect infringement
13 theories.  The parties dispute exactly when Wizards knew or should have known the
14 relevant facts:  Defendants point out that at the time Wizards filed this lawsuit it knew
15 Shards of Fate was available to be played and had been played online (*see* Resp. to 2d
16 Mot. at 3-4, 7), while Wizards responds that it delayed asserting indirect infringement
17 because it was "unaware of the scope and timing" of the use of Shards of Fate by third
18 parties before it conducted discovery (2d Mot. at 4).  Whatever the merits of that debate,
19 it is clear that by at least January 2015 Wizards believed that a substantial number of
20 third parties had played Shards of Fate during the term of the patent, and was
21 contemplating claims for indirect infringement.  (*See* 2d Lorbiecki Decl. ¶¶ 4-6; 3d
22

ORDER- 11

Lorbiecki Decl. ¶¶ 12-13.) Wizards, however, waited until July 2, 2015, to file its motion to amend its complaint. (2d Mot. at 1.)

On the other hand, not all of the blame for the post-January 2015 delay lies with Wizards. Wizards asserts, and Defendants do not dispute, that the parties began discussing indirect infringement in January 2015 in the context of a discovery dispute over Defendants' subscriber list. (*See* 2d Lorbiecki Decl. ¶¶ 4-6.) Wizards further shows that it proposed a stipulation that would have collapsed indirect infringement into direct infringement, and that Defendants told Wizards they would consider that stipulation. (*See id.* ¶¶ 4-6, 9, 11-13, 15-16, Exs. B-F.) By engaging in these discussions and leading Wizards to believe they might sign the proposed stipulation in an effort to protect their subscriber list, Defendants helped postpone the time when Wizards requested leave to amend from the court.

Further, any delay on Wizards' part is not undue in the context of the case schedule. *See Ponsoldt*, 939 F.2d at 798-99. Trial is over eight months away, and the discovery cutoff is more than three months in the future. (Sched. Ord. at 1-2.) Moreover, while the *Markman* hearing is fast approaching (*id.* at 1), Defendants do not challenge Wizards' representation that the proposed amendment will not impact claim construction (*see* 2d Mot. at 5; Resp. to 2d Mot.). The court therefore finds no undue delay that would support denying leave to amend.

    3. <u>Prejudice to the opposing party</u>

The next factor is prejudice. "Prejudice," in the context of a motion to amend, means "undue difficulty in prosecuting a lawsuit as a result of a change of tactics or

theories on the part of the other party." *Deakyne v. Cmmsrs. of Lewes*, 416 F.2d 290, 300 (3d Cir. 1969); *Amersham Pharacia Biotech, Inc. v. Perkin-Elmer Corp.*, 190 F.R.D. 644, 648 (N.D. Cal. 2000). The prejudice inquiry carries the "greatest weight" among the five factors. *Eminence Capital, LLC.*, 316 F.3d at 1052. Even so, "[t]he party opposing amendment bears the burden of showing prejudice." *DCD Programs*, 833 F.2d at 186. The non-moving party must do more than merely assert prejudice; "'it must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the . . . amendments been timely.'" *Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir. 1989). As a corollary, delay alone is not sufficient to establish prejudice, nor is a need for additional discovery. *Amersham*, 190 F.R.D. at 648; *In re Circuit Breaker Litig.*, 175 F.R.D. 547, 551 (C.D. Cal. 1997). To justify denying leave to amend, the prejudice to the non-moving party must be "substantial." *Morongo Band*, 893 F.2d at 1079.

      This factor favors allowing amendment. Defendants argue that they will suffer prejudice in two forms. First, they contend that Wizards' delay has deprived them of the opportunity to obtain valuable evidence related to indirect infringement. (*See* Resp. to 2d Mot. at 9-11.) Specifically, Defendants state that if Wizards had included indirect infringement in its original complaint, they would have obtained an opinion letter from an attorney stating that Shards of Fate does not infringe the '957 Patent, and this opinion letter would have been evidence that Defendants lacked the state of mind necessary for indirect infringement. (*See id.*) As Defendants point out, however, such a letter would be relevant only to alleged infringement occurring after the letter. (*See id.* at 10 (citing

ORDER- 13

*Anchor Wall Sys. v. Rockwood Walls, Inc.*, 610 F. Supp. 2d 998, 1005 (D. Minn. 2009)).) Because the '957 Patent has expired, an opinion letter would no longer be relevant.

The court sees little prejudice in this circumstance. Wizards filed this lawsuit with only one month remaining in the life of the '957 Patent. (*See* Compl. at 1; Wiz. Op. Cl. Const. Br. at 3.) Thus, even if Wizards had included a contributory infringement claim in its original complaint and Defendants had quickly obtained an opinion letter after receiving the complaint, that opinion letter would have applied to at most a month of alleged infringement. In addition, because Defendants would have obtained the letter after Wizards initiated litigation, the letter likely would have had limited probative value regarding Defendants' intent. *See DataQuill Ltd. v. High Tech Computer Corp.*, 887 F. Supp. 2d 999, 1013 (S.D. Cal. 2011). Defendants also fail to explain why Wizards' original complaint, which requests treble damages, presumably for willful infringement, provided insufficient motivation to obtain an opinion letter. (*See* Compl. at 24; *see also* FAC ¶ 93 & at 34); *Beatrice Foods Co. v. New England Printing & Lithography Co.*, 923 F.2d 1576, 1578 (Fed. Cir. 1991); *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 830-31 (Fed. Cir. 1992), *abrogated on other grounds by Markman v. Westview Instruments, Inc.*, 78 F.3d 967 (Fed. Cir. 1995). Like indirect infringement, willful infringement implicates the defendant's state of mind, and as such, an opinion letter is a potential defense. *See Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1191 (Fed. Cir. 1998) ("Obtaining an objective opinion letter from counsel also provides the basis for a defense against willful infringement."). Accordingly, the court finds that Defendants have not shown substantial prejudice with their first argument.

ORDER- 14

Second, Defendants argue that they would have "pursued different case strategies" if Wizards "had timely asserted its indirect infringement claims." (Resp. to 2d Mot. at 11.) In support of this position, Defendants point out some unique aspects of indirect infringement claims that would require "new discovery and legal analysis" for which limited time remains. (*Id.*) This asserted prejudice amounts to little more than the ordinary burdens of defending a lawsuit, which are insufficient to justify denying leave to amend. *See Aten Int'l Co. v. Emine Tech. Co.*, No. SACV09-843AGMLGX, 2010 WL 1462110, at *4 (C.D. Cal. Apr. 12, 2010); *see also Amersham*, 190 F.R.D. at 648; *In re Circuit Breaker Litig.*, 175 F.R.D. at 551. Moreover, Defendants offer little detail about what information or discovery they would seek, and most of what they do identify is readily accessible to them. (*See id.* at 12 (placing first on a list of things Defendants would have done differently the task of investigating "in detail how [Defendants'] subscribers play the game"); *see also id.* at 11 (noting that indirect infringement "requires discovery as to whether defendants intended its [sic] customers to infringe")); *On Track Innovations Ltd. v. T-Mobile USA, Inc.*, No. 12 CIV . 2224 AJN JCF, 2014 WL 406497, at *3 (S.D.N.Y. Feb. 3, 2014) (rejecting the defendant's argument that adding indirect infringement claims would prejudice it by requiring "significant additional discovery" and noting that a defendant "should have accessible to it the evidence bearing on its own state of mind" (internal quotation marks omitted)). Thus, the court finds that Defendants have failed to establish that amendment would result in substantial prejudice. *See Morongo Band*, 893 F.2d at 1079.

### 4. Futility of amendment

The fourth factor is whether amendment would be futile. A court may deny leave to amend if the proposed amendment is futile or would be subject to dismissal. *Carrico v. City & Cnty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011). For purposes of this analysis, an amendment is "futile" if it is clear that the complaint could not be saved by amendment. *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011). Specifically, the court must determine whether the deficiencies in the pleadings "can be cured with additional allegations that are consistent with the challenged pleading and that do not contradict the allegations in the original complaint." *Id.* (quotation marks omitted). "A party should be afforded an opportunity to test his claim on the merits rather than on a motion to amend unless it appears beyond doubt that the proposed amended pleading would be subject to dismissal." *Mahone v. Pierce Cnty.*, No. C10-5847 RBL/KLS, 2011 WL 2009740, at *2 (W.D. Wash. May 23, 2011) (citing *Roth v. Garcia Marquez*, 942 F.2d 617, 629 (9th Cir. 1991)).

Wizards addresses this factor only briefly (*see* 2d Mot. 6), and Defendants do not address it at all (*see* Resp. to 2d Mot.). Furthermore, having reviewed Wizards proposed second amended complaint (*see* Prop. 2d Am. Compl.), the court cannot say that "it appears beyond doubt that the proposed pleading would be subject to dismissal." *Mahone*, 2011 WL 2009740, at *2. As such, the court finds that this factor weighs in favor of amendment.

//
//

ORDER- 16

5. Previous amendments

A court may also consider whether the moving party has had previous opportunities to amend its pleadings. A district court's discretion to deny amendment is especially broad when the court has already given a plaintiff one or more opportunities to amend. *Chodos v. West Publishing Co.*, 292 F.3d 992, 1003 (9th Cir. 2002); *Mir. v. Fosburg*, 646 F.2d 342, 347 (9th Cir. 1980). On August 1, 2014, Wizards amended as of right in response to a motion to dismiss that related to non-patent issues. (*See* FAC at 1; MTD; *see also* Dkt. ## 14, 17.) Wizards has not amended its complaint since then, nor has it sought leave to do so. (*See* Dkt.) The court therefore finds that this factor also favors amendment.

6. Summary

The court concludes that leave to amend the complaint is appropriate under the liberal standard of Rule 15. All five of the traditional factors favor amendment, including the most important factor: prejudice. As such, the court grants Wizards' motion for leave to amend its complaint. In addition, because the court concludes that leave to amend under Rule 15 constitutes good cause under Local Patent Rule 124, *see SAP Aktiengesellschaft*, 250 F.R.D. at 475, the court also grants Wizards' motion to amend its preliminary infringement contentions.

### IV. CONCLUSION

For the foregoing reasons, the court GRANTS Wizards' motion to amend its complaint (Dkt. # 65) and GRANTS Wizards' motion to amend its preliminary infringement contentions (Dkt. # 41). Wizards shall file its second amended complaint


1 no later than two weeks from the date of this order.  In addition, the court DISMISSES

2 WITHOUT PREJUDICE the 91 copyright claims that Wizards seeks to withdraw in its

3 motion to amend its complaint.

4       Dated this 4th day of August, 2015.

5

6

7                     JAMES L. ROBART
                    United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22