THE HONORABLE JAMES L. ROBART

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WIZARDS OF THE COAST LLC, | Civil Action No. 2:14-cv-00719-JLR. |
| Plaintiff, | SECOND AMENDED COMPLAINT FOR COPYRIGHT,  PATENT AND TRADE DRESS INFRINGEMENT |
| v. | |
| CRYPTOZOIC ENTERTAINMENT, LLC, and HEX ENTERTAINMENT, LLC, | |
| Defendants. | JURY TRIAL REQUESTED |

Plaintiff Wizards of the Coast LLC ("Wizards") hereby alleges the following causes of action against Defendants.

## I.    NATURE OF THE ACTION

1.    This action results from Defendants' blatant and willful misappropriation and infringement of Wizards' most valuable intellectual property assets pertaining to its "Magic: The Gathering®" trading card game and trading cards ("Magic").

2.    Wizards is a worldwide leader in the trading card game and role-playing game categories, and a leading developer and publisher of game-based entertainment products. Wizards develops, manufactures, and distributes the popular and unique Magic trading card game in both paper and digital formats.

3.    Upon information and belief, in a deliberate attempt to profit from Wizards' valuable intellectual property and hard-earned reputation, Cryptozoic Entertainment, LLC

LOWE GRAHAM JONES PLLC

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

("Cryptozoic Entertainment") and Hex Entertainment, LLC ("Hex Entertainment") (collectively "Cryptozoic") have developed and marketed the game "Hex: Shards of Fate," ("Hex") through which Cryptozoic intentially and willfully copied the look and feel, the ornamental aspects, and the pleasing and ornamental layout of the functional features of Magic trading cards. Cryptozoic Entertainment and Hex Entertainment have, further, implemented those copied playing cards in promulgation of a game that substantially duplicates the mechanics, plot, actions and elements of Magic, often retaining the same name for actions within the game play.

4.      Mr. Cory Jones (hereinafter "Jones"), is a former professional Magic competitor in competitions Wizards sponsored to promote the Magic game and, as a competitor, became intensely familiar with the Magic game. Jones founded and serves as President of each of Cryptozoic Entertainment, LLC and Hex Entertainment, LLC, the Defendants. His knowledge of the Magic game, garnered in professional play, is attributable to each of the defendants by virtue of his role as an executive officer. Upon information and belief, Jones was involved in all decisions as to the nature of playing cards and mechanics of play in the infringing Hex game.

5.      Moreover, Cryptozoic's willful intent to trade off of Wizards' intellectual property and to create a false association between Hex and Magic is evident by the fact that it chose to copy the distinctive Magic playing pieces. Wizards brings this suit to address its considerable losses and prevent the continued willful infringement of its valuable intellectual property rights. Cryptozoic's willful and malicious misappropriation has caused and will continue to cause irreparable and continuing harm to Wizards.

6.      This action arises out of Cryptozoic's development of both electronic and printed cards which in game play willfully infringes upon the world-famous game Magic and its iconic selection and presentation of information. Through both of a Kickstarter™ funding campaign where the similarity to Magic is made evident to likely purchasers of the opportunity to play the game and through the distribution of printed cards which infringe the copyright, Cryptozoic has

SECOND AMENDED COMPLAINT-2
Civil Action No. 2:14-cv-00719-JLR
WZRD-6-0001 P60 2nd AMD CMP (P55)

LOWE GRAHAM JONES PLLC

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

traded off of Wizards' intellectual property and created a false association between its infringing

game, Hex wich clearly trades off of the original and distinctive elements of the Magic game.

7.     As the following comparison illustrates, Hex playing cards are obvious

duplicates of the playing cards in Wizards' iconic Magic game:





*Defendants' Hex Playing Card named "Spiritual Lotus."*          *Wizards' Playing Card named "Black Lotus" and registered with the Copyright Office under Registration VA00005965507; dated 12/13/93*

8.     After learning of the Kickstarter Offering to support the development of the Hex

game, Wizards notified Cryptozoic of such changes as it would find sufficient to differentiate the

Hex game from Magic. After laying out the nature of the infringement to Cryptozoic's attorney,

Wizards continued to negotiate for changes to facilitate development of Hex as a similar but

sufficiently distinct trading card game, thereby allowing both to complement each other in the

market. Ultimately, Cryptozoic indicated through counsel that it was unwilling to make material

changes to accommodate Wizards' assertions of its intellectual property in the Magic game.

Negotiations reached impasse.

9.     Accordingly, due to Cryptozoic's blatant and willful infringement and apparent

refusal to cease and desist, Plaintiffs have no choice but to file this lawsuit seeking injunctive

relief and damages that they have suffered as a result of Defendant's (a) copyright infringement

SECOND AMENDED COMPLAINT-3
Civil Action No. 2:14-cv-00719-JLR
WZRD-6-0001 P60 2nd AMD CMP (P55)

LOWE GRAHAM JONES PLLC

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

under the Copyright Act of 1976, as amended, 17 U.S.C. § 101 et seq., (b) false designation of origin, false endorsement, and unfair competition under the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

## II.     JURISDICTION AND VENUE

10.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338 because this action alleges violations of federal statutes including the Copyright Act (17 U.S.C. § 101), the Lanham Act (15 U.S.C. §§ 1114), and the Patent Act (35 U.S.C. §§ 101).

11.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 (diversity jurisdiction).

12.     This Court has personal jurisdiction over Defendant because it purposely availed itself of the jurisdiction of federal district court in the Western District of Washington.

13.     Upon information and belief, this Court has personal jurisdiction over Defendants Cryptozoic because they regularly transact business within the Western District of Washington, has contracted to sell the opportunity to play Hex and distributed printed Hex playing cards to citizens of Washington residing within the Western District, and has distributed, offered for sale, sold and advertised Hex throughout the United States, including Washington and this judicial district.

14.     In a fundraising effort on the Kickstarter.com website, Cryptozoic Entertainment is identified as the entity developing the Hex: Shards of Fate game; yet, when a citizen of Washington residing in the Western District sent money to effect purchase of a membership enabling Hex game play, thereby to support the development of the game, that citizen received email correspondence from Hex Entertainment, rather than Cryptozoic Entertainment. Because of the apparent cooperation between the entities to effect this sale within the Western District, personal jurisdiction over each within this judicial district is proper.

15.     Upon information and belief, there were a pattern of such advanced sales within the District such that the defendant "conducted business" over the Internet by engaging in

SECOND AMENDED COMPLAINT-4
Civil Action No. 2:14-cv-00719-JLR

WZRD-6-0001 P60 2nd AMD CMP (P55)

LOWE GRAHAM JONES PLLC

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

repeated or ongoing business transactions with forum residents. Each advance sale of membership anticipates that each forum resident will have ongoing communication with Cryptozoic in order to play the Hex game. Further, as play facilitated through the Internet will require ongoing deliberate and repeated republications of the infringing works with these same residents of the forum such that personal jurisdiction within the forum is appropriate.

16.     Further, as the Magic Online resides on servers within the district and because the Cryptozoic employees repeated played the Magic game as alleged herein, and these acts were necessary to copy the protected elements of Magic Online, that play occurred through interaction with Wizards' own servers located within the district, personal jurisdiction within the District is also appropriate.

17.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) as Defendant has committed tortious acts in this jurisdiction; a substantial part of the events giving rise to the claim occurred here; and a substantial part of the property that is the subject of the action is situated here.

## III.     THE PARTIES

18.     Wizards is a Delaware limited liability company, maintaining its principal place of business at 1600 Lind Avenue Southwest, Suite 400, Renton, Washington 98057.

19.     Cryptozoic Entertainment is a California limited liability company maintaining its principal place of business at 25351 Commercentre Drive, Suite 250, Lake Forest, California 92630. Hex Entertainment is a California limited liability company maintaining its principal place of business at the same address as that of Cryptozoic Entertainment, 25351 Commercentre Drive, Suite 250, Lake Forest, California 92630.

20.     Upon information and belief, Cryptozoic Entertainment and Hex Entertainment are cooperating in the development of the Hex: Shards of Fate game for their mutual benefit such that actions complained of herein of one are legally chargeable to the other. Hex Entertainment is

SECOND AMENDED COMPLAINT-5
Civil Action No. 2:14-cv-00719-JLR
WZRD-6-0001 P60 2nd AMD CMP (P55)

LOWE GRAHAM JONES PLLC

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

merely an "alter ego" of Cryptozoic Entertainment. For this reason, the allegations of this complaint identify the Defendants, collectively, as "Cryptozoic."

### IV.   GENERAL ALLEGATIONS

21.   Magic: The Gathering is a trading card game created by Richard Garfield and first published in 1993 by Wizards of the Coast. Magic is a true original--the first collectable trading card game produced. Recognized for its unique game play, Magic has won numerous awards, including the Mensa Select Award, the Origins Awards for Best Fantasy or Science Fiction Board Game and the Best Graphic Presentation of a Board Game, the Deutscher Spiele Preis' Special Award for New Game Mechanics, the Italian Gaming Society's Gioco dell'Anno Award and the Super As d'Or award for Best New Game Concept and Genre Introduced in France. Magic has attracted a large following and continues to thrive, with more than twelve million players as of 2013. Magic can be played by two or more players each using a deck of printed cards or a deck of virtual cards through the Internet-based games, Magic: The Gathering Online ("Magic Online") and Magic: The Gathering – Duels of the Planeswalkers (further described below).

22.   Magic is currently available in eleven languages – English, French, German, Italian, Russian, Spanish, Portuguese, Japanese, Spanish, Chinese Traditional and Chinese Simplified, with players and fans in more than 70 countries worldwide.

23.   Magic is played using elaborately illustrated cards that transport players into an imaginary realm in which they do battle with one another. In playing Magic, players take on the role of Planeswalkers – powerful mages who battle others for glory, knowledge, and conquest. Each game represents a battle between Planeswalkers, who employ spells, artifacts, and creatures depicted on individual Magic cards to defeat their opponents. A player starts the game with twenty "life points" and loses the game when he or she is reduced to zero life points. Players lose life points when they are dealt "damage" by being attacked with summoned creatures or when

SECOND AMENDED COMPLAINT-6
Civil Action No. 2:14-cv-00719-JLR

WZRD-6-0001 P60 2nd AMD CMP (P55)



spells or other cards cause them to lose life directly. A player can also lose if he or she must draw from an empty deck (called the "library") during the game.

24.     Each player needs a deck to play a game of Magic. The cards that make up the deck include play elements; The two basic kinds of cards in Magic are "spells" and "lands". Lands provide "mana", or magical energy, which is used as magical fuel when the player attempts to cast spells. Players may only play one land per turn. More powerful spells cost more mana, so as the game progresses more mana becomes available, and the quantity and relative power of the spells played tends to increase. Some spells also require the payment of additional resources, such as cards in play or life points.

25.     To begin play, a player selects cards from their library (library being the term to describe a player's collection of cards available for play) to build a deck. Deck building requires a lot of strategy in that players must choose among thousands of cards which they want to play. Selection of cards to build a deck requires players to evaluate the power of their cards in their libraries, as well as the possible synergies between them, and their possible interactions with the cards they expect an opponent to play against them. Importantly, each card has qualities that define mechanics of play as a consequence of invoking that card. The card also has elements of a story and artwork to enhance the story. These elements and mechanics vary by card and are unique to that card.

26.     To construct a library, players can purchase starter game sets, theme decks and booster packs. In most tournament formats, decks are required to be a minimum of sixty cards, with no upper limit so the design of the rules encourages multiple purchases of game sets to build a more comprehensive library. Players may use no more than four copies of any named card, with the exception of "basic lands", which act as a standard resource in Magic, and some specific cards that state otherwise. In "limited" tournament formats, where a small number of cards are opened for play from booster packs or tournament packs, a minimum deck size of forty cards is used. Depending on the type of play, some cards have been "restricted" (the card is

SECOND AMENDED COMPLAINT-7
Civil Action No. 2:14-cv-00719-JLR
WZRD-6-0001 P60 2nd AMD CMP (P55)

LOWE GRAHAM JONES PLLC

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

limited to a single copy per deck) or "banned" (the card is no longer legal for tournament play). These limitations are usually for balance of power reasons, but have been occasionally made because of gameplay mechanics.

27.     Each Magic card, approximately 63 x 88 mm in size (2.5 by 3.5 inches), has a "face" which displays the card's name, an illustration appropriate to the card's concept, and written instructions which direct how that card can be played. Approximately fourteen thousand (14,000) unique cards have been produced for the game as of March, 2014, many of them with variant editions, artwork, or layouts, and 600–1000 new cards are added each year. Wizards has printed over six and one-half billion (6,500,000,000) Magic cards.

28.     Players begin the game by shuffling their decks and then drawing seven cards. Players draw one card at the beginning of each turn, except the first player on the first turn. Players alternate turns consisting of several phases. Most cards can only be played during the main phase of the player's own turn. The player whose turn it is always has the first chance to play cards. At the end of a player's turn, if that player has more than seven cards in hand, the player discards until his or her hand contains seven cards. The contents of other players' decks and hands are not usually known to players.

29.     The two basic kinds of cards in Magic are "lands" and "spells." Land cards provide "mana," or magical energy, which is used as magical fuel when the player attempts to cast spells. Players may only play one land card per turn. More powerful spells cost more mana, so more mana becomes available as the game progresses, and the quantity and relative power of the spells played tends to increase. Some spells also require the payment of additional resources, such as cards in play or life points. Spells come in several varieties: "sorceries" and "instants" have a single, one-time effect before they go to the "graveyard" (discard pile); "enchantments" and "artifacts" are "permanents" which remain in play after being cast to provide a lasting, magical effect; "creature" spells (also a type of permanent) summon creatures that can attack and

SECOND AMENDED COMPLAINT-8
Civil Action No. 2:14-cv-00719-JLR
WZRD-6-0001 P60 2nd AMD CMP (P55)

LOWE GRAHAM JONES PLLC

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

damage an opponent. The Magic card set *Lorwyn* introduced the "Planeswalker" card type, which represents a powerful hero who fights with his or her own magic abilities.

30.     The popularity and sophistication of Magic is such that tournaments of all sizes regularly occur, including tournaments with many hundreds of players from various countries. In 1994, Wizards instituted the DCI (formerly the "Duelists' Convocation International"), the official sanctioning body for enforcing rules and promoting fairness in competitive Magic tournament play. The DCI publishes tournament rules and operating procedures and sanctions tournaments. Since its inception, the DCI has sanctioned more than 3 million tournaments worldwide and millions of unique players. In order to play in sanctioned events, players must register for membership and receive a DCI number. The DCI maintains a global player ratings database and members have access to their entire tournament history online.

31.     Jones has been a member of the DCI since January 13, 1996. In his  capacity as a competitive Magic player, , Jones became intimately familiar with the rules of Magic and the various cards that constitute the Magic game. Since joining the DCI, Jones has participated in over 150 Organized Play events – including eight Pro Tour appearances. Jones' most recent Organized Play event occurred on November 19, 2005 – a Pro Tour Qualifier event in Anaheim, CA. A complete breakdown of Jones' Organized Play participation breaks down as follows:

| Event Type | Event Count |
|:---:|:---:|
| Magic Pro Tour | 8 |
| Magic Pro Tour Qualifier | 44 |
| Magic Grand Prix | 2 |
| Magic Grand Prix Trial | 2 |
| Magic National Qualifier | 4 |
| Magic Prerelease | 3 |

| General Magic Event | 88 |
|---|---|
| Eight Players Side Event | 1 |
| Side Events - Prerelease | 1 |

The point totals reflected above show Jones to be intimately familiar with the game and as having had access to the copyrighted material asserted herein.

32.    Magic Online is an Internet-based video game operated by Wizards that utilizes the same mechanics and game play of Magic, thereby allowing players to play across great distances and outside of one another's immediate presence. Magic Online went "live" on June 24, 2002. Magic Online users can play the Magic game or trade digital cards with other users.

33.    Magic Online is played as an electronic analogue to the physical card game such that strategy and mechanics learned in the trading card version of Magic are immediately transferrable to Magic Online. And while it is the rarer case, Magic Online players can just as readily pick up a deck of Magic cards and immediately play the game. Digitized artwork reproduces the look of Magic, and in using a mouse, users click on cards to play them on a virtual tabletop. Each game is hosted by the server, which applies a rules engine to enforce proper play.

34.    Players are free to set up or join games of their choice. In addition, official events such as 8-man constructed, limited sealed deck and drafts, as well as larger tournaments take place according to a regular schedule. Magic Online digital card sets are released online shortly after they are released in paper form, thereby preserving the similarity of play.

35.    Additionally, in 2009 Wizards began distributing its now annualized video game, Magic: The Gathering – Duels of the Planeswalkers with sequels released in 2011, 2012, 2013, and, most recently, on July 15, 2014 (collectively, "Duels"). Duels follows the standard rules of Magic and features player vs. environment and player vs. player modes, as well as campaigns, individual player unlockable features, puzzles, downloadable content, and in-game item

LOWE GRAHAM JONES PLLC

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

purchases. With millions of worldwide downloads and in-game purchases, Duels is available on PC, Xbox 360, Xbox One, PlayStation 3, PlayStation 4 and Apple and Android tablets.

36.     Wizards has taken prudent steps to preserve the game against copying. Appendix 1 hereto includes a list of copyrights granted and those currently filed and pending which protect the several expressions of Magic including, but not limited to, the protectable visual arts of its cards.

37.     Further, in 1997, Wizards received a patent on the technology it pioneered in developing Magic, United States Patent No. 5,662,332 ("the '332 patent"), whose claim set was enhanced by a re-issuance of the patent in 2003, as United States Patent No. RE 37,957 ("the '957 patent"). The '957 patent issued with 60 claims, including over 25 independent claims, which define both a card game that uses either trading cards or a computer-generated image thereof and a method of playing the game.

38.     Magic has succeeded with a loyal following; the magnitude of which has caused some competitors to publish imitations, and on several occasions Wizards has identified and resolved instances of infringement. The look of the cards is instantly recognizeable in the community due to its famous trade dress. Given the wide-spread popularity of Magic and its position in the gaming ecosystem, there can be no doubt that Cryptozoic had access to every card, whether tangible or virtual, including all cards protected by the copyright registrations and applications contained in Appendix 1.

39.     As Crytozoic began to design and develop the game that would become Hex, it borrowed very heavily from extant cards that had been released in various of the sets of cards sold by Wizards in it several releases of cards formed according to the patent. With each release of cards, Wizards sought copyright protection.

40.     One example of such a card is the "Murder" card promulgated by Wizards in 2012. It was derived from earlier versions known as "Dark Banishing" in the Ice Age release (shown here), which received registration serial VA0000683010 with the date December 3,

LOWE GRAHAM JONES PLLC

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

1996, and in the Mirage edition VA0000830465 on the same date; in a later special edition called Tempest, the registration was granted as VA0000929289 on May 1, 1998. In the 7th Edition, Wizards registered a copyright on the set with a serial number VA0001099267 with the registration May 3, 2001; in a later release, the 8th Edition Magic preserved the new deck as a derivation of the older deck in VA0001212928 dated September 24, 2003; a further derivation appeared in the 9th Edition which was granted the serial number VA0001360182 on May 24, 2006.



41.     Dark Banishing was derived from an earlier card, "Terror" (as shown here) and was protected in several sets released in the following sets registered as follows: the Alpah/Beta/Unlimited set – VA0000596507 dated December 13, 1993; Revised – VA0000711530; January 23, 1995; a Fourth Edition – VA0000750636, with registration date March 29, 1996; in a Fifth Edition – VA0000875745, dated August 13, 1997; in a Tenth Edition – VA0001622983, dated August 17, 2007.



42.     In 2012, Wizards modified the card to portray a wizened bearded man in a darkened setting engulfed in shadows and, again, bearing the legend "Murder" and includes the plot elements to "destroy target creature" and categorization "Instant". Wizards protected this derivation with a registration VA0001868160 granted on August 15, 2012 and shown above.



43.     Crytozoic copied the Wizards card presenting a Hex card entitled "Murder" shown here and including a wizened bearded man in a darkened setting engulfed in shadows and, again, bearing the

LOWE GRAHAM JONES™

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

legend "Murder" and includes the plot elements to "destroy target non-artifact troop" and categorization "Quick Action" (Hex's "Quick Action" is the exact same game play mechanic as Magic's "Instant"). The card is clearly a derivation and never authorized by Wizards, the holder of the registrations described herein.



44.     In another example is, as discussed above in the background, the "Black Lotus" card. The Black Lotus illustration is a depiction of a black lotus flower over a foliage backdrop as shown here. The "Black Lotus" is notoriously connected to the Magic game. Black Lotus card is usually considered to be the most valuable non-promotional Magic card ever printed. In the Alpha, Beta, and Unlimited Editions, Wizards deposited this and the other specimens of the set for which Wizards received the registration serial VA00005965507 dated December 13, 1993.



45.     Cryptozoic released the "Spectral Lotus" and identically to the Magic card, the copied card is labeled an "artifact" which can be played at zero cost, and grants 3 counts of energy ("mana" in the Magic vernacular) when sacrificed. As such, the card likewise gives the player an enormous jump in "energy" development in the early stages of a Hex game (or "mana" development in the early stages of a Magic game). Former Pro player and Magic writer Zvi Mowshowitz has declared Black Lotus as the best artifact of all time, claiming every deck in the history of the game is better with a Black Lotus in it. Cryptozoic has further capitalized on the notoriety of the card by offering a collector card known as the "Spectral Lotus Garden" shown here.



SECOND AMENDED COMPLAINT-13
Civil Action No. 2:14-cv-00719-JLR

WZRD-6-0001 P60 2nd AMD CMP (P55)

LOWE GRAHAM JONES PLLC

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301



46.     Because of the number of cards copied, a list of playing cards Cryptozoic has copied for use in the electronic game along with the Magic cards from which elements have been copied as well as the corresponding Magic copyrights have been attached hereto as Appendix 1 and the allegations of copying are hereby incorporated as if fully set out here.

47.     Additionally, Cryptozoic had access to even the most recent Magic cards through use of Magic Online. Apart from the experience of the Cryptozoic principal, Jones, the developers of Hex, through playing Magic Online, all had access to the copyrighted works. For example, through the IP Address, 207.7.98.98 which is registered to Crytozoic Entertainment Inc., one of the two defendants, numerous hours of access to the materials are documented. In the period from May 10, 2010 through July 22, 2014, from that IP address, users having the various Magic Online account names of "thegirdard", "Chrosis", "TheCollection", "Big Dan Teague", "thechark", "onoval2", "Paladon", "TheRoboticArm2", "lorgalis", "dawnyoshi", "Chris_Woods", "SiriHamster", "loveandkittens", "Tanzan", "Mitchell Chumley", "Awokmyweewok", "blinkman987", "Judas Iscariot Hogwallop", "matthoff", "Vicalis", "acomer", "Magician15", "Trebolution", and "AoX" logged in and played Magic Onlinein excess of 765 times. Each of these pseudonyms identifies a Crytozoic staff member playing the game from Cryptozoic equipment. For example,  Magic Online account "SirHamster" was created on April 8, 2012 and is owned by Dan Clark a developer for Cryptozoic working on Hex as he is introduced to the public in a marketing video (https://www.youtube.com/watch?v=3IYkKMiMsdg&safe=active). The owner of this account has logged in twenty-four times from that same IP address: 207.7.98.98. The owner of this account has been regular and involved in intense play, having completed thirty-seven trades and played in 390 tournaments.The total time in playing interaction with the online game adequately demonstrates access to the copyright registered material.

LOWE GRAHAM JONES PLLC

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

48.     In late 2010 or early 2011, defendant Cryptozoic Entertainment, LLC, through their agents and employees began developing a trading card game. The play, plot, look and feel of the game mimicked the Magic game. On April 7, 2011, Cryptozoic Entertainment, LLC and the third party game publisher entered into a contract whereby, Cryptozoic Entertainment, LLC would assemble and submit design proposals to the publisher which would include rules, cards, design and description of proposed play mechanics. The publisher would then consider the designed game as a candidate for a publishing contract. In the proposed publishing contract, the publisher was to develop and publish the trading card game in an electronic form which would mimic play of the Magic game as Magic is played in a paper card format. By March 30, 2012, the publisher and Crytozoic Entertainment LLC, entered a contract identifying Cryptozoic Entertainment, LLC as designer of the game. The parties agreed to develop the game under the working title "Project Reckoning." Pursuant to the agreement, the publisher would retain a third party software developer to develop the game in accordance with the design promulgated by Cryptozoic Entertainment, LLC.

49.     Throughout 2012, defendant Cryptozoic Entertainment, LLC, through its employees, agents, and contractors collaborated with the developer, directing it to develop a software game engine into what would be known as Hex: Shards of Fate. Cryptozoic Entertainment LLC authored numerous documents to describe the design overview, the lore, the management of the card decks, and other details thereby to fully convey the design to developer. In the course of development, employees and agents of Cryptozoic Entertainment LLC repeatedly played the game to test the development and to direct the developer in further development of the software.

50.     On November 15, 2012, Cryptozoic Entertainment and the publisher executed a "Common Interest Agreement between Square Enix, Inc. and Cryptozoic Entertainment LLC regarding U.S. Patent No. RE37,957." On December 6, 2012, Counsel for the publisher delivered to to Cryptozoic Entertainment, LLC an "Opinion Memorandum regarding U.S. Patent No.

SECOND AMENDED COMPLAINT-15
Civil Action No. 2:14-cv-00719-JLR

WZRD-6-0001 P60 2nd AMD CMP (P55)

LOWE GRAHAM JONES ᴾᴸᴸᶜ

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

RE37,957." Cryptozoic Entertainment, LLC was aware of the existence and relevance of the patent from at least November 15, 2012.

51.     On December 17, 2012, the publisher gave notice to Cryptozoic Entertainment LLC of its intent, pursuant to its terms, to terminate the Design Agreement between the publisher and Cryptozoic Entertainment LLC. On March 20, 2013, the publisher agreed to sell the all of its intellectual property in the Hex game as well as all art and development contracts to Cryptozoic Entertainment LLC pursuant to what was termed an Intellectual Property Purchase Agreement. Pursuant to that agreement, Cryptozoic Entertainment, LLC would pay the publisher to obtain all rights to the designated intellectual property, art and development contracts, as well as the game engine developed by developer. By this agreement, Cryptozoic could announce itself as it did in an October 24, 2013 press release as "Cryptozoic Entertainment, developer and publisher" of Hex: Shards of Fate.

52.     .In March 2013 Cryptozoic Entertainment, LLC launched a "Kickstarter" fundraising campaign to obtain funds to meet its obligations to publisher and to support the development and release of Hex described above. Hex is a nearly identical game to Magic. The rules as set forth there and on the website are identical to those of Magic. The artwork for so many of the cards is so clearly derived from the Magic game. For example, "The Wrath of Zakiir" card shown here duplicates the "Form of the Dragon" card in the Ninth Edition (VA0001360182 dated May 24, 2006) and the Scourge Edition (VA0001246055 dated April 19, 2004), and shown alongside it here. Another such example is the "Zombie" card in the Hex game duplicating







both in its plot elements and its artwork, the Magic "Walking Corpse" (Magic 2013 Edition – registered as VA0001868160, dated August 15, 2012 and the Innistrad Edition – registered as VA0001860999 dated October 25, 2011).

53.     A press release Cryptozoic issued with the Kickstarter launch states "Kickstarter supporters of Hex will be provided with a variety of unique collectable rewards including Beta invites for early access to the game. Depending on their pledge level, backers can receive exclusive cards only available through the Kickstarter campaign, customizable sleeves, starter sets, booster packs, in-game bonuses such as increased loot drops and special equipment, exclusive access to tournaments and much more. At the highest level, "Producer Tier" backers will receive executive producer credit, a vanity card, and the once-in-a-lifetime opportunity to create their own personalized trading card." The descriptions of Hex that accompany the announcement show cards and rules that nearly identically mimic those of Magic.

54.     The Kickstarter campaign closed and the project was successfully funded on June 7, 2013. At the reporting website, the campaign is disclosed as having far exceeded its campaign goals (i.e. https://www.kickstarter.com/projects/cze/hex-mmo-trading-card-game/posts, which reports that 17,765 backers pledged $2,278,255 on what had been a $300,000 goal).

55.     On June 1, 2013, members of Cryptozoic Entertainment, LLC agreed to form defendant Hex Entertainment, LLC. On May 13, 2014 Cryptozoic Entertainment, LLC agreed with Square Enix to substitute Hex Entertainment, LLC as assignee of all of the intellectual property and other assents incidental to the development of the Hex game to Hex Entertainment, LLC and to allow Hex Entertainment, LLC to assume all of Cryptozoic Entertainment, LLC's rights, title, interest, duties and obligations as set forth in the March 20, 2013 assignment agreement. To this date, Hex Entertainment, LLC has owned and controlled all play of the Hex: Shards of Fate game.

56.     The gaming community has been very much impressed by the similarity of the two games. For example, one noted online gamer who authors a blog

SECOND AMENDED COMPLAINT-17
Civil Action No. 2:14-cv-00719-JLR
WZRD-6-0001 P60 2nd AMD CMP (P55)

LOWE GRAHAM JONES PLLC

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

(http://www.thresholdpodcast.com/magic-hex-mix/) reported on the Hex game which he styles, "Threshold, the Hex Podcast." On September 5, 2013, the author assured Magic players that they ought to try Hex by setting forth the substantial similarities of the games one to another:

> Magic: The Gathering. For the majority of us, we're not new to [Trading Card Games ("TCGs")]. We probably have played Magic at some point in our lives that has led us to Hex. If we haven't, we've probably heard about it… This article is written to help show the similarities between Magic and Hex. It's also here to help those that want to learn about Hex. They can do so by playing Duels of the Planeswalker while they wait for the Hex alpha to hit.

57.     The author then goes on to compare a Creature Card from Magic to a corresponding Troop Card from Hex.

**Creature/Troop**



*Vampire Outcasts*                    *Corrupt Harvester*

Troops are just like creatures, they act the same way. In this example they both have the equivalent ability of dealing damage and gaining that much life, Lifelink vs Lifedrain. There are other abilities creatures can share from Magic:
Haste = Speed

SECOND AMENDED COMPLAINT-18
Civil Action No. 2:14-cv-00719-JLR
WZRD-6-0001 P60 2nd AMD CMP (P55)

LOWE GRAHAM JONES PLLC

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

Flying = Flight
Vigilance = Steadfast
Defender = Defensive
First Strike = Swiftstrike
Hexproof = Spellshield
Trample = Crush

58.    Going still further, the author then picks up the next significant card sets, those of Enchantments, Artifacts Sorcery and Instant Action from the Magic game and compares each, respectively to the corresponding card sets, those of Constants, Artifacts, Basic Action, and Quick Action from the Hex game:

**Enchantment/Constant**

     

*Aven Shrine*                          *Blessing the Fallen*

Enchantments are pretty much the same as Constants. It wouldn't surprise me to see Creature Constant come along in an expansion or two. You can also have artifacts that give off effects like constants.

LOWE GRAHAM JONES PLLC

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

**Artifact/Artifact**





*Pyrite Spellbomb*                                    *Sapper's Charge*

Artifacts work the exact same way as they do in Magic. You can only cast them during your main phases. It wouldn't surprise me to see cast-able equipment come along in the game at some point.

LOWE GRAHAM JONES PLLC

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**Sorcery/Basic Action**





*Divination*                                    *Oracle Song*

Sorceries are the same as Basic Actions. They can only work on your turn during the main phases, and only when you have priority and there is nothing that needs to be resolved.

LOWE GRAHAM JONES PLLC

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

**Instant/Quick Action**





*Giant Growth*                                    *Wild Growth*

Instants work like Quick Actions. You can cast those at any time you have priority.


59.     Finally, the author compares each game's  resource system and describes the actions

of the cards thus:

> Lands are the same as Resources, they're what you use to play cards. In Magic you use
> a Forest to create 1 green mana. In Hex you use a resource to gain 1 wild (green)
> threshold which is semi equivalent to green mana, you also gain 1 resource for the turn
> and the game (1/1), and 1 charge for your champion. Every turn you gain your
> resources just like untapping your lands in Magic. Having 1 forest would allow you to
> play any card in Magic that has only 1 green mana symbol in the casting cost.

> Go back and look through the examples. You'll see I've done my best to match up
> casting costs and effects. Vampire Outcasts has a converted casting cost of 4 (2
> colorless, 2 black). Corrupt Harvester has a casting cost of 4 and you need to have at
> least 2 purple threshold. 2 purple thresholds would be equivalent to having two
> swamps in play.

LOWE GRAHAM JONES PLLC

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

1
2
3
4
5
6
7
8
9
10
11
12



*Forest*



*Wild Shard*

13  60.     Other users in the gaming community were confused because of the near identicality

14  of the two games. On Cryptozoic's own forum a registered user, on December 1, 2013, stated, "I

15  have played a lot of CCGs [Collectible Card Games], and for the most part, CCGs are very similar to

16  each other. However, I've never seen a CCG that is as similar to another as Hex is to Magic."

17  Another such member stated on the same day, "I am a game designer, so I can say that design-wise

18  Hex=Magic. Hex is not "like" Magic, Hex is Magic, with a few tweaks to take advantage of the

19  digital environment." (http://forums.cryptozoic.com/showthread.php?t=24596&page=8).

20  61.     The rest of the forum resonated with similar remarks. For example, on June 10, 2013,

21  a member stated "I'm not very worried about calling it a "clone" or not. But it is VERY similar to

22  Magic. I may be wrong but I feel that people who say "it's not THAT similar" or "any 2 games in the

23  same genre will be similar" probably don't know many TCGs. I have played many TCGs, paper and

24  digital, and none of them come as close to Magic as HEX. Yes, there are some digital tricks (most of

25  them could be made to work in Magic, although with clumsier bookkeeping required) and a slightly

26  different resource system, but otherwise is almost like a new skin over the same game. So the thing

LOWE GRAHAM JONES PLLC

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

is, if HEX cannot be called a Magic clone, no other TCG can. HEX may not be a "clone" but it's the

closest to one we have in the market."

(http://forums.cryptozoic.com/showthread.php?t=24596&page=8).

62.     The mechanics of Hex and the graphics in the electronic interface, mimic the actions

of Magic Online and Duels. For example, functions such as duels between players are very similarly

represented in each game. In Magic, the duel appears thus:



**Screen shot of Duels of the Planeswalkers 2014**

In Hex, the same function appears thus:



**Screen shot of Hex: Shards of Fate**

63.     After announcements of the release of developmental versions of Hex, Wizards became aware that Cryptozoic had copied both the mechanics of play and the general look and feel of Magic. Wizards also became aware that members of the gaming community had, like those referenced above, played the game and had determined the game to be a nearly identical copy of Magic. Indeed, on a website hosted by Cryptozoic, itself, in its description of gameplay stated, in response to questions about the similarity, "If it ain't broke, don't fix it" (see https://hextcg.com/tell-all-your-friends).

64.     Wizards moved to preserve and protect its intellectual property. In March of 2014, Wizards contacted Cryptozoic and informed them of Wizards' rights in the Magic game. On March 20, 2014, Wizards informed defendants through their common attorney, Patrick Sweeney, by telephone and confirming email that defendants were infringing the United States Patent No. RE 37,957 ("the '957 patent") and offered to resolve the infringement. Wizards offered multiple opportunities to Cryptozoic to resolve this matter short of a formal assertion. The chart below summarizes the nature and number of copied elements that Wizards found unacceptable

LOWE GRAHAM JONES PLLC

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

| Magic | HEX |
|---|---|
| 20 starting life | 20 starting life |
| Win = remove all life or run opponent out of cards | Win = remove all life or run opponent out of cards |
| Turn cards ("tap") to designate a card action (attack or use ability) | Turn cards ("tap") to designate a card action (attack or use ability) |
| Untap cards at the beginning of each card | Untap cards at the beginning of each card |
| Creatures feature power and toughness and damage resets at the beginning of every turn | Creatures feature power and toughness and damage resets at the beginning of every turn |
| 5 types of spells and creatures (red, blue, green, white and black) | 5 types of spells and creatures (red, blue, green, white and black) |
| Colorless (artifact) spells and creatures | Colorless (artifact) spells and creatures |
| 7 card starting hand | 7 card starting hand |
| Draw 1 card per turn | Draw 1 card per turn |
| Maximum Hand Size = 7 | Maximum Hand Size = 7 |
| Allowed to play one resource per turn (one mana card) | Allowed to play one resource per turn (one mana card) |
| Combat (attacking and choosing blockers) | Combat (attacking and choosing blockers) |
| Card resolution (first in, last out "stack" resolution) | Card resolution (first in, last out "stack" resolution) |
| Card Types and Effects<br><br>• Enchantment<br>• Artifact<br>• Creature<br>• Land<br>• Instant<br>• Sorcery | Card Types and Effects<br><br>• Constant<br>• Artifact<br>• Troop<br>• Resource<br>• Quick Action<br>• Basic Action |
| Rarity | Rarity |



LOWE GRAHAM JONES PLLC

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

| | |
|---|---|
| • Common<br>• Uncommon<br>• Rare<br>• Mythic Rare | • Common<br>• Uncommon<br>• Rare<br>• Legendary |
| **Booster Pack Distribution**<br><br>• 1 Rare (or Mythic Rare), 3 Uncommons, 11 Commons | **Booster Pack Distribution**<br><br>• 1 Rare (or Legendary Rare), 3 Uncommons, 11 Commons |
| **Turn Structure**<br><br>• Untap<br>• Upkeep<br>• Draw<br>• First Main<br>• Combat<br>  - Declare Attackers<br>  - Declare Defenders<br>  - Assess Damage<br>• Second Main<br>• End | **Turn Structure**<br><br>• Untap<br>• Upkeep<br>• Draw<br>• First Main<br>• Combat<br>  - Declare Attackers<br>  - Declare Defenders<br>  - Assess Damage<br>• Second Main<br>• End |
| Land cards referred to as "Mana" | Resource Cards referred to as "Mana" |
| Deck referred to as "Library" | Deck referred to as "Library" |
| Discard pile referred to as "Graveyard" | Discard pile referred to as "Graveyard" |
| Deck Size = 60 cards | Deck Size = 60 cards |
| Maximum number of cards in a deck = 4 | Maximum number of cards in a deck = 4 |
| Mulligan Rule (redraw starting hand with one less card; multiple times) | Mulligan Rule (redraw starting hand with one less card; multiple times) |
| Creatures may not be played the turn they come into play ("summoning sickness") | Creatures may not be played the turn they come into play ("summoning sickness") |
| Creature Abilities ("Card Mechanics")<br><br>• Haste<br>• Flying<br>• Vigilance | Current Hex Card Mechanics are the same as Magic<br><br>• Speed<br>• Flight<br>• Steadfast |

SECOND AMENDED COMPLAINT-27
Civil Action No. 2:14-cv-00719-JLR

WZRD-6-0001 P60 2nd AMD CMP (P55)

LOWE GRAHAM JONES PLLC

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

| | |
|---|---|
| • Defender | • Defensive |
| • First Strike | • Swiftstrike |
| • Hexproof | • Spellshield |
| • Trample | • Crush |
| • Indestructible | • Invincible |
| • Lifelink | • Lifedrain |
| • Bushido | • Rage |
| • Bushido | • Rage 1 |
| • Bushido | • Rage 2 |
| • Bushido | • Rage 3 |
| • Bushido | • Rage 4 |

65.     In spite of earnest negotiations, Cryptozoic found none of the offered opportunities acceptable. As such, the negotiations reached impasse, necessitating the instant suit.

## V.     FIRST CAUSE OF ACTION
## COPYRIGHT INFRINGEMENT [17 U.S.C. §§101, SEQ.]

66.     Wizards repeats and realleges each and every allegations above as though fully set forth herein. Wizards has suitably registered or applied for registration for copyrights for Magic as set forth in Appendix 1 hereto and through Wizards' own extensive publication of the game, Cryptozoic has had access to the copyrighted material.

67.     Cryptozoic intentionally copied the cards, plot, elements, circumstances, play sequence, and flow of Magic. Players in both games are confined to the same parameters based on an initial dealing of seven cards and play progresses in a substantially identical manner. Players must efficiently use their skill and calculation to assemble their initial decks and then in suitable selection and play of the various cards.

68.     As demonstrated in more detail above and as will be shown at trial, Cryptozoic intentionally copied the physical layout and ornamental aspects of Magic cards, the visual presentation of each card on the screen is substantially similar to the same sort of card within the Magic card game in either its paper or electronic versions; the sequence and flow of the game, the scoring system used by the game, and the overall look and feel of the game are identical.

LOWE GRAHAM JONES PLLC

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

69.     In short, Cryptozoic has produced a nearly identical copy of Magic, including the original selection and arrangement of multiple elements of Magic. Cryptozoic intentionally copied Magic in a manner that willfully infringes on Wizards' copyrights and unless Cryptozoic is enjoined, it will continue do so. At no time did Wizards authorize Cryptozoic to reproduce, adapt, or distribute Magic.

70.     Further, by its sales through the Kickstarter campaign, Cryptozoic has obtained in excess of two million dollars, a sum that constitutes one of a number of losses of related revenues Wizards could reasonably have expected to earn.

71.     By their willfull actions, Crytozoic, has infringed and will continue to infringe Wizards copyrights in the Magic game by, *inter alia*, copying, publiclay displaying, and distributing the Hex game and any printed playing cards associated therewith, which are substantially similar to and derived from Magic, without any authorization or permission from Wizards.

72.     As a direct result of Cryptozoic's intentional actions, which constitute a willfull infringement of Wizards' rights, Wizards has sustained, and will continue to sustain, substantial injury, loss, and damages in an amount exceeding $500,000.00 and as proven at trial.

73.     Wizards is entitled to a permanent injunction restraining Cryptozoic, its officers, directors, agents, employees, representatives, and all persons acting in concert, from engaging in further acts of copyright infringement.

74.     Wizards is further entitled to recover from Cryptozoic the gains, profits and advantages Cryptozoic has obtained as a result of their acts of copyright infringement. Wizards is at present unable to ascertain the full extent of the gains, profits and advantages Cryptozoic has obtained by reason of their acts of copyright infringement, but Wizards is informed and believes, and on that basis alleges, that Cryptozoic obtained such gains, profits and advantages in an amount exceeding $500,000.00.

LOWE GRAHAM JONES PLLC
701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

## VI.    SECOND CAUSE OF ACTION

## (LANHAM ACT UNFAIR COMPETITION, FALSE ENDORSEMENT AND FALSE DESIGNATION OF ORIGIN [15 U.S.C. 1125(A)])

75.    Wizards repeats and realleges each and every allegations above as though fully set forth herein.

76.    Cryptozoic deliberately and intentionally copied the game play, rules, player interaction with the game, layout and arrangement, visual presentation, sequence and flow, scoring system, and Magic's overall look. By duplicating the "total image and overall appearance of a product," Cryptozoic has copied Magic's particular trade dress, the copying of which shows confusion among Wizards' customers.

77.    The distinctive design of the Magic cards is not functional as it is not essential to the use or purpose of the game nor does the design affect the cost or quality of the cards; the design is merely an ornamental arrangement of features, some of which are functional.For these reasons the distinctive design of the Magic cards and the arrangement of features are protectable as trade dress in either the paper or electronic versions of Magic.

78.    The Wizards trade dress in the Magic game is non-functional and is inherently distinctive or has acquired distinction within the meaning of the Lanham Act.

79.    Through their intentional use of the misleading design and look-and-feel of the Hex game, Defendant Cryptozoic is knowingly and intentionally misrepresenting and falsely designating to the general public the affiliation, connection, association, origin, source, endorsement, sponsorship and approval of Hex, and intends to misrepresent and falsely designate to the general public the affiliation, connection, association, origin, source, endorsement, sponsorship and approval of the Hex game, so as to create a likelihood of confusion by the public as to the affiliation, connection, association, origin, source, endorsement, sponsorship and approval of the Hex game. At no time did Wizards authorize Cryptozoic to reproduce, adapt, or distribute Magic.

LOWE GRAHAM JONES PLLC

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

80.     Through their intentional use of the misleading design and look-and-feel of Hex, Cryptozoic is knowingly and intentionally misrepresenting and falsely designating to the general public the affiliation, connection, association, origin, source, endorsement, sponsorship and approval of Hex, and intends to misrepresent and falsely designate to the general public the affiliation, connection, association, origin, source, endorsement, sponsorship and approval of Hex by Wizards, so as to create a likelihood of confusion by the public as to the affiliation, connection, association, origin, source, endorsement, sponsorship and approval of Hex.

81.     Cryptozoic's conduct has been intentional and willful, and is calculated specifically to trade off the goodwill that Wizards has developed in its successful Magic games, making this an exceptional case under 15 U.S.C. § 1117.

82.     The aforesaid acts of Cryptozoic constitute false designation of origin, false endorsement, and unfair competition in violation of 15 U.S.C. § 1125(a)(1)(A).

83.     Further, by its sales through the Kickstarter campaign, Cryptozoic has obtained in excess of two million dollars, a sum that constitutes one of a number of losses of related revenues Wizards could reasonably have expected to earn.

84.     As a direct result of Cryptozoic's actions infringing Wizards' trade dress rights, Wizards has sustained, and will continue to sustain, substantial injury, loss, and damages in an amount exceeding $500,000.00 and as proven at trial. Wizards is entitled to a permanent injunction restraining Cryptozoic, its officers, directors, agents, employees, representatives, and all persons acting in concert, from engaging in further acts of trade dress infringement.

LOWE GRAHAM JONES PLLC

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## VII.   THIRD CAUSE OF ACTION

### (LANHAM ACT UNFAIR COMPETITION, TRADE DRESS DILUTION [15 U.S.C. 1125(C)])

85.   Wizards repeats and realleges each and every allegations above as though fully set forth herein.

86.   The Magic trade dress is famous and it is distinctive. It has existed in the market for over twenty years before the existence of the Hex game that duplicates its trade dress and Cryptozoic has introduced Hex with its duplicative trade dress into the market after the Magic trade dress became famous.

87.   After Wizards Cryptozoic deliberately and intentionally copied the game play, rules, player interaction with the game, layout and arrangement, visual presentation, sequence and flow, scoring system, and Magic's overall look. By duplicating the "total image and overall appearance of a product," Cryptozoic has copied Magic's particular trade dress, the introduction of Hex has diluted the trade dress that Wizards through its promotion of the Magic game has suitably nurtured into "famous" status.

88.   The distinctive design of the Magic cards is not functional as it is not essential to the use or purpose of the game nor does the design affect the cost or quality of the cards; the design is merely an ornamental arrangement of features, some of which are functional.For these reasons the distinctive design of the Magic cards and the arrangement of features are protectable as trade dress in either the paper or electronic versions of Magic.

89.   The Wizards trade dress in the Magic game is non-functional and is inherently distinctive or has acquired distinction within the meaning of the Lanham Act.

90.   Through their intentional duplication and introduction of the Magic trade dress into commerce, Defendant Cryptozoic is knowingly and intentionally diluted in the eyes of the general public the famous trade dress Magic comprises.



LOWE GRAHAM JONES PLLC

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

91.     Cryptozoic's conduct has been intentional and willful, and is calculated specifically to trade off the goodwill that Wizards has developed in its successful Magic games, making this an exceptional case under 15 U.S.C. § 1117.

92.     The aforesaid acts of Cryptozoic constitute false designation of origin, false endorsement, and unfair competition in violation of 15 U.S.C. § 1125(a)(1)(A).

93.     Further, by its sales through the Kickstarter campaign, Cryptozoic has obtained in excess of two million dollars, a sum that constitutes one of a number of losses of related revenues Wizards could reasonably have expected to earn.

94.     As a direct result of Cryptozoic's actions diluting Wizards' trade dress rights, Wizards has sustained, and will continue to sustain, substantial injury, loss, and damages in an amount exceeding $500,000.00 and as proven at trial. Wizards is entitled to a permanent injunction restraining Cryptozoic, its officers, directors, agents, employees, representatives, and all persons acting in concert, from engaging in further acts of trade dress dilution.

## VIII.   FOURTH CAUSE OF ACTION

### (PATENT ACT – PATENT INFRINGEMENT; [35 U.S.C. 271(A), (B), AND (C)])

95.     Wizards repeats and realleges each and every allegations above as though fully set forth herein.

96.     In 1997, Wizards received Letters Patent denominated United States Patent No. 5,662,332 ("the '332 patent") on that inventive game, rules and playing cards, and then received the subsequent reissue as United States Patent No. RE 37,957 ("the '957 patent"). The '957 patent issued with 60 claims, including over 25 independent claims, that cover both a card game that uses trading cards and a method of playing the game as describe above. Wizards has owned the patent throughout the period of the defendant's infringing acts and still owns the patent. Wizards has also marked the patent number(s) on the physical products.

SECOND AMENDED COMPLAINT-33
Civil Action No. 2:14-cv-00719-JLR
WZRD-6-0001 P60 2nd AMD CMP (P55)

LOWE GRAHAM JONES PLLC

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

97.     Defendants Cryptozoic Entertainment, LLC and its successor in interest, Hex Entertainment LLC were aware of the existence and relevance of the '957patent from at least November 15, 2012.

98.     Cryptozoic Entertainment LLC and its successor in interest Hex Entertainment LLC have  intentionally and willfully infringed the '957 patent by making, selling, and using the cards and methods that embody the patented invention.

99.     Cryptozoic Entertainment LLC and its successor in interest Hex Entertainment LLC have developed a game engine software to enforce a set of rules that governs the display, selection, movement, play and results of play of cards in a manner that infringes the '957 patent. Defendants offered access to the game engine software with the intent that members of the public ("Players") would play the game and Defendants could make no money from the development of the game, if Players did not play the game. Thus, there exists no substantial non-infringing use of the game engine software Defendants provide. Cryptozoic Entertainment, LLC and its successor in interest, Hex Entertainment LLC intentionally contributorily infringed the '957 Patent.

100.    In videos available to the public, Cryptozoic Entertainment, LLC and its successor in interest, Hex Entertainment LLC taught Players how to play the Hex: Shards of Fate game; Defendants authored and placed extensive instructions for use of the Hex game engine software on Internet sites, which, if followed, would result in infringement of the '957 Patent. Defendants have promoted the use of the game engine software through, at least, the Kickstarter campaign alleged above, as well as through advertisement and paid social media placement. Cryptozoic Entertainment, LLC and its successor in interest, Hex Entertainment LLC have intentionally induced Player to infringe the '957 Patent.

101.    Wizards has complied with the statutory requirement of placing a notice of the '957 patent on all sets of cards it manufactures and sells either electronically or in paper embodiments, and has given Cryptozoic written notice of the infringement.

SECOND AMENDED COMPLAINT-34
Civil Action No. 2:14-cv-00719-JLR
WZRD-6-0001 P60 2nd AMD CMP (P55)

LOWE GRAHAM JONES℠ᴾᴸᴸᶜ
701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

102.     Wizards is further entitled to recover from Cryptozoic the gains, profits, and advantages Cryptozoic has obtained as a result of their violation of the Patent Act. Wizards is at present unable to ascertain the full extent of the gains, profits, and advantages Cryptozoic has obtained by reason of their acts of patent infringement, but Wizards is informed and believes, and on that basis alleges, that Cryptozoic obtained such gains, profits, and advantages in an amount exceeding $500,000.00.

## IX.     PRAYER FOR RELIEF

**WHEREFORE,** Wizards prays for judgment against Cryptozoic as follows:

1.     For a permanent injunction enjoining Cryptozoic and all persons acting in concert with them from manufacturing, producing, distributing, adapting, displaying, advertising, promoting, offering for sale or selling, or performing any materials that are substantially similar to Magic and to deliver to the Court for destruction or other reasonable disposition all materials and means for producing the same in Cryptozoic's possession or control;

2.     For a permanent injunction, enjoining Cryptozoic and all persons acting in concert with them from using the trade dress of Magic in connection with any paper, electronic, or web-based trading card video game or from otherwise using Wizards' trade dress, as embodied in either of the paper or electronic forms of Magic or any confusingly similar use thereof, in any way causing the likelihood of confusion, deception, or mistake as to the source, nature, or quality of Cryptozoic's games and to deliver to the Court for destruction or other reasonable disposition all materials bearing the infringing trade dress in Cryptozoic's possession or control;

3.     For any and all damages sustained by Wizards;

4.     For all of Cryptozoic's profits wrongfully derived from its intentionally and willful infringement of Wizards' intellectual property rights;

5.     For a Judgment against Cryptozoic declaring this case to be exceptional under the Patent Act and therefore subjecting Cryptozoic to liability to include treble damages as authorized under Section 285 of the Patent Act;



LOWE GRAHAM JONES PLLC

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

6.      For reasonable attorney's fees;

7.      For costs of suit herein; and

8.      For other such relief as the Court deems proper.

RESPECTFULLY SUBMITTED this 5th day of August, 2015.

Mark L. Lorbiecki, WSBA No. 16796
Lawrence D. Graham, WSBA No. 25402

Lowe  Graham  Jones PLLC
701 Fifth Avenue, Suite 4800
Seattle, WA 98104
T: 206.381.3300
F: 206.381.3301
Lorbiecki@LoweGrahamJones.com
Graham@LoweGrahamJones.com
Attorneys for Wizards, LLC

SECOND AMENDED COMPLAINT-36
Civil Action No. 2:14-cv-00719-JLR

WZRD-6-0001 P60 2nd AMD CMP (P55)

Lowe Graham Jones PLLC
701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

1

## CERTIFICATE OF SERVICE

2

3    I, Jean M. Larsen, hereby certify that I am an employee of Lowe Graham Jones PLLC and that
     on August 5, 2015 I electronically filed the foregoing **SECOND AMENDED COMPLAINT
4    FOR COPYRIGHT,  PATENT AND TRADE DRESS INFRINGEMENT** and this
     **CERTIFICATE OF SERVICE** with the Clerk of the Court using the CM/ECF system, which
5    upon information and believe will send notification of such filing to the following attorneys of
     record:

6

7                                     Paul T. Meiklejohn
                                      DORSEY & WHITNEY
8                                  701 Fifth Avenue, Suite 6100
                                     Seattle, WA 98104-7043
9                                  meiklejohn.paul@dorsey.com
                          *Attorney for Defendants Cryptozoic Entertainment LLC*
10                                 *and Hex Entertainment, LLC*

11

12                                  s/Jean M. Larsen
                                    Jean M. Larsen, Paralegal
13

14

15

16

17

18

19

20

21

22

23

24

25

26

SECOND AMENDED COMPLAINT-37
Civil Action No. 2:14-cv-00719-JLR

WZRD-6-0001 P60 2nd AMD CMP (P55)

LOWE GRAHAM JONES PLLC

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301